UNITED STATES OF AMERICA
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DWAYNE GERVAIS and<br>ASHLEE BREWSTER<br>*Plaintiffs,*<br><br>v.<br><br>TOWN of EASTON,<br>CHIEF OF POLICE KEITH BOONE<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>LT. PAUL BAKER<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>OFFICER ANDREW JOSHUA STANTON,<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>OFFICER JARED NEVENS,<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>OFFICER TIMOTHY WEBSTER<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>SGT. DETECTIVE DARREN MANGOTT<br>    in his individual capacity<br>as a Massachusetts Police Officer<br>*Defendants* | Civil Action No(s).: |

COMPLAINT AND JURY DEMAND

Now comes Plaintiffs, Dwayne Gervais and Ashlee Brewster, (hereinafter "plaintiffs") by

and through their respective undersigned attorneys, and hereby file this complaint against the

Town of Easton and its agents, servants and employees.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 and § 1343 (4) over plaintiffs' claims under the U.S. Constitution which are both brought directly under 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because it is so related to the federal claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

3. This Court has personal jurisdiction over all defendants because the individual defendants reside in the Commonwealth of Massachusetts, and surrounding towns as they are employed by the Town of Easton which is a subdivision of the Commonwealth.

4. Venue is proper in the Eastern District of this court pursuant to 28 U.S.C. § 1391 (b), because all defendants reside in and a substantial part of what is giving rise to this complaint arose from events occurring within the Town of Easton.

5. Plaintiffs provided sufficient and timely notice of their intention to file legal claims against defendants pursuant to Chapter 258, §4, by providing written notices via certified mail on that date to the executive officer of the Town of Easton as provided under the statute.

## PARTIES

6. At all times relevant hereto, Dwayne Gervais (hereinafter "Gervais") is an individual domiciliary of the Commonwealth of Massachusetts with a last and usual place of abode located at 81 Central Street, South Easton, Commonwealth of Massachusetts.

7. Ashley Brewster (hereinafter "Brewster"), at all times relevant here too, is an individual domiciliary of the Commonwealth of Massachusetts with a last and usual place of abode located at 81 Central Street, South Easton, Commonwealth of Massachusetts.

8. The Town of Easton is a municipality organized under the laws of the Commonwealth of Massachusetts.

9. Chief of Police Keith Boone is the chief law enforcement officer for the Town of Easton, Massachusetts, and at all times relevant was responsible for the supervision, training, and education of the law enforcement officers employed by the Town of Easton, Massachusetts.

10. Lieutenant Paul Baker is employed as a police officer with the Town of Easton and at all times relevant hereto acted in a supervisory role and commander of other police officers for the Town of Easton, Massachusetts.

11. Police Officer Andrew Stanton at all times relevant hereto was a police officer employed by the Town of Easton, Massachusetts.

12. Police Officer Jared Nevens at all times relevant hereto was a police officer employed by the Town of Easton, Massachusetts.

13. Police Officer Timothy Webster at all times relevant hereto was a police officer employed by the Town of Easton, Massachusetts.

14. Sgt. Detective Darren Mangott is employed as a police officer with the Town of Easton, Massachusetts.

15. At all times relevant hereto, all individual defendants are citizens of the United States and residents of the Commonwealth of Massachusetts. The defendants were acting under the color of state law in their capacity as law enforcement officers employed by the Town of Easton Police Department, Easton Massachusetts.

FACTUAL ALLEGATIONS

1. Dwayne Gervais (hereinafter, "Gervais") was home at 81 Central Street, South Easton, Commonwealth of Massachusetts on the evening of October 22, 2022.

2. Gervais came home after working at the Massachusetts Bay Transportation Authority ("MBTA") in Boston servicing buses.

3. Once Gervais came home and during that evening, he was in an upstairs bedroom playing 'online' video games.

4. At or around this time, a Ms. Ashley Brewster ("Brewster") arrived home from work and an evening with one of her friends.

5. Brewster walked upstairs to the bedroom while Gervais was in the bedroom at his desk monitor playing video games and an argument ensued between them, where Brewster at some point yells repeatedly: "get out my house" "get the f-k out".

6. Gervais gets up from the desk and immediately walks out of the bedroom. He goes downstairs and Brewster closes the bedroom door behind him.

7. Brewster called 911 and states while the call is being recorded: 'just get out" "get the f-k out".

8. Brewster does speak to the 911 dispatcher and denies that Gervais physically assaulted her or possessed any weapon while inside the bedroom.

9. After going downstairs, Gervais realizes that he doesn't have his keys, his wallet or his cell phone. Those items were on the desk in the bedroom by the console where he was playing video games.

10. Gervais walks back up the stairs and he knocks on the door where Brewster now was but she did not answer or otherwise respond. Gervais pushes the door to gain entry where he proceeds to gather his belongings and proceed back downstairs without incident.

11. At some point, the 911 dispatch called back the phone number which originated from Brewster.

12. Brewster told the 911 dispatch operator: "everything is fine. Everything's fine, it's "OK", "I'm all set", and then hung up the phone.

13. Subsequently, the dispatcher broadcasts the call that Brewster had just made, but never broadcasts that Brewster was harmed or in danger.

14. The dispatcher broadcasted that it was a 'hang-up' call, without further reporting the additional communication from Brewster stating: "everything is fine. Everything's fine, it's "OK", "I'm all set".

15. The dispatcher never broadcasted that the "hang-up" call came from a person who claimed they were in need of police services, let alone reported that the person was in apparent danger.

16. Officer Andrew Stanton ("Ofc. Stanton") arrived at 81 Central Street, Easton, MA (and/or "the property") n response to the broadcast from dispatch.

17. Ofc. Stanton was a police officer who had been on active duty with the Easton Police Department for approximately 4 months at the time of his arrival to 81 Central Street.

18. When Ofc. Stanton arrived, he had no lights or sirens activated.

19. Ofc. Stanton, once on scene and alone (meaning without any other accompanying officers) parks his cruiser on the street away from 81 Central Street.

20. Ofc. Stanton approached 81 Central Street on foot and began to walk around the property.

21. While Ofc. Stanton walked around the property, he heard no disturbance.

22. While Ofc. Stanton walked around the property, he saw no signs of forced entry.

23. While Ofc. Stanton walked around the property, Gervais was still inside of 81 Central Street.

24. While Ofc. Stanton initially walked around the property upon his arrival, Gervais was unaware of the presence of Ofc. Stanton.

25. While still inside of 81 Central Street, Gervais hears the home detection monitor say, "motion detected rear door".

26. From where he was standing, Gervais looked across the room and saw the back doorknob turning on the inside.

27. Officer Stanton was at this door located at the rear of the residence turning the back doorknob.

28. Gervais, upon seeing the door handle being manipulated and it being dark downstairs, he walked into the kitchen to get a better look, and while in the kitchen, grabbed a knife for protection – thinking it was an intruder.

29. After Gervais grabs the knife, he doesn't see anything immediately, but he knows that a person is walking around the perimeter of the house and that somebody was trying to gain entry to the back door. In the darkness, he trips and falls, and the knife pricks him in his chest.

30. Gervais immediately gets to his feet as he sees a figure at the front window to what they call a "farmer's porch window" near the front door entrance.  He walks to the front 'farmer's window' trying to look outside.

31. At the moment Gervais is looking out the farmer's porch window is when Ofc. Stanton shines a light into the window.

32. At the moment Ofc. Stantion shines a light into the farmer's porch window he does not identify himself as a police officer.

33. While Ofc. Stanton is shining a light into the farmer's porch window, Gervais gets startled and hits the window with the knife he had in his hand, still believing an intruder is outside.

34. Upon striking the window described above, the blade breaks the window.

35. After the blade breaks the window, Mr. Gervais' hand follows through the window after the striking motion, and then Mr. Gervais immediately retreats his hand back.

36. Upon Gervais pulling his hand back inside the window, the broken glass cuts into his forearm all the way up to his wrist and fingers, and Gervais struggles to free himself from the glass, causing additional damage to his arm hand and fingers.

37. Upon the window breaking, Ofc. Stanton ran backwards.

38. Upon Ofc. Stanton running backwards, Gervais dropped the knife on the inside of the window where the window was broken.

39. After Gervais dropped the knife at this location, the knife remained in the same location until it was discovered by police underneath the windowsill of the farmer's window.

40. At some point during the issue which Mr. Gervais had at the farmer's porch window, Ashley Brewster, comes downstairs and witnesses Gervais injuring himself at the window, and Gervais bleeding with an apparent need for medical assistance.

41. Brewster runs into the bathroom and grabs a towel to stop Gervais from bleeding.

42. Brewster pulls Gervais away from the windowsill toward the stairs and administered first aid to Gervais's wounds.

43. At some point after Ofc. Stanton's arrival to 81 Central Street an Officer Jared Nevens ("Ofc. Nevens") arrived on scene.

44. Ofc. Nevens was a senior patrolman on duty that night.

45. Ofc. Nevens was serving as the officer in charge of the shift due to a shortage of staffing.

46. Upon Ofc. Nevens arrival to 81 Central Street, Ofc. Stanton told Nevens: "we got a body" and "a hostage situation".

47. The statement made by Ofc. Stantion to Ofc. Nevens that "we got a body" was a false statement.

48. The statement made by Ofc. Stantion to Ofc. Nevens that we got a "hostage situation" was false.

49. Ofc. Stanton made no observations of any person inside of 81 Central Street holding another person hostage.

50. Ofc. Stanton made no observations of any person inside of 81 Central Street threatening any other person inside that residence.

51. Ofc. Stanton made no observations of any person inside of 81 Central Street who appeared in fear of another person inside the residence.

52. At the time Ofc. Stanton told Ofc. Nevens of a "hostage situation", both officers were approximately thirty (30) yards or so away from the actual structure of 81 Central Street.

53. Shortly thereafter, and from this distance of about 30 yards or so away from the actual structure of 81 Central Street, Ofc. Nevens shot approximately two rounds from his department issued firearm through a window at 81 Central Street.

54. Either one or both of these rounds fired by Ofc. Nevens made contact with Gervais, by entering his left buttocks and scrotum sack.

55. One of the rounds fired by Ofc. Nevens also made contact with Brewster.

56. Upon Gervais being shot, he immediately falls to the ground.

57. Upon Gervais being shot and falling to the ground, he was immediately thereafter immobilized.

58. One of the rounds discharged by Ofc. Nevens also pierced Brewster's thighs and traveled through the other side.

59. Brewster upon being shot immediately collapsed.

60. Brewster and Gervais began yelling and screaming in pain after being shot by Officer Nevens.

61. At the time that Ofc. Nevens shot into the property, Ofc Nevens had an obstructed view inside of the property due to the window he shot through having a treadmill with coats hanging on it.

62. Whether or not Ofc. Nevens is aware of how many of his rounds struck the civilians inside Ofc. Nevens admits that two civilians (Brewster and Gervais) were injured as a result of him firing into 81 Central Street.

63. After Brewster was shot, she managed to make her way to the front door to open it for the officers.

64. Brewster was in so much pain that she had to hobble and/or crawl to the front door to open it.

65. After the shots, Ofc. Nevens says at some point thereafter: "where's the knife?"

66. Upon the officers entrance, Brewster yells: "Why did you shoot us! Why did you shoot us!"

67. While Brewster is exclaiming "Why did you shoot us!  Why did you shoot us!", Gervais is still laying on the ground in a pool of his own blood – the result from his bullet wounds.

68. Emergency medical personnel arrived on scene and administered first aid to the plaintiffs.

69. A search of the perimeter of the home was conducted by members of the Easton Police Department after the shooting.

70. During a search of the perimeter, a video surveillance camera was found on a tree (hereinafter "tree camera") positioned toward the front door where the shooting occurred.

71. Defendant Officer Timothy Webster, ("Ofc. Webster") took the surveillance camera down from its' position on the tree.

72. Upon taking the surveillance camera down, Ofc. Webster threw it onto the ground.

73. Ofc. Webster threw this surveillance camera down in an attempt to destroy evidence of the incident.

74. Ofc. Webster engaged in the act listed in the above 3 paragraphs at the direction of a superior officer believed to be Defendant, Lt. Paul Baker.

75. The audio and visual footage from that tree camera was saved digitally on a virtual platform.

76. The fact that this audio and visual footage preserved digitally was a fact which was unbeknownst to any of the defendants on the night of the shooting at 81 Central Street.

77. As a consequence of the shooting of Mr. Gervais by Officer Nevens, the bullet which struck him remains lodged in his gluteus maximus as of present.

78. The bullet remains lodged in Mr. Gervais' gluteus maximus because it's too close to his spine to remove.

79. The injuries sustained by both Gervais and Brewster came after:

    a.  A hang up call reported by the 911 dispatcher to responding officers, but with no claim of any imminent dangers to civilians or officers; and along with

    b.  False statements being made from Ofc. Stanton to Ofc. Nevens that there was a "hostage situation" inside.

80. If Ofc. Stanton believed that there was a hostage situation inside, that belief was not a reasonable one as Ofc. Stanton never saw any person inside of 81 Central Street that was appearing to be held inside the home against their will.

81. Ofc. Stanton made no observations inside of 81 Central Street to support any conclusion that he was confronted with a "hostage situation".

82. When Ofc. Stanton told Ofc. Nevens that there was a hostage situation inside of 81 Central Street, Ofc. Stanton made such a statement in reckless disregard for whether the statement was actually true or not.

83. Ofc. Nevens did not have appropriate training at the time to react to such an event (a hostage situation) if it were true in any event.

84. Furthermore, there was no "hang up" call as reported by the dispatcher.

85. Based upon the actions of both Ofc. Nevens and Ofc. Stanton that night when they arrived at 81 Central Street, they were deliberately indifferent to the health and safety of any of the occupants inside of that property.

86. Ofc. Webster and Lt. Baker were also deliberately indifferent to the health and safety of the occupants inside of 81 Central Street, as, they attempted to destroy evidence to hide and protect the actions of Officers Nevens and Stanton.

87. Hence, the Plaintiffs allege that Defendants Webster, Baker, Nevens and Stanton were all working in concert in their deliberate indifference towards the health and safety of the Plaintiffs.

88. Shortly after Gervais was shot by Ofc. Nevens, he was charged with the crime(s) of Assault with a Dangerous Weapon and Assault and Battery upon a household member – the named victim being Ms. Ashley Brewster.

89. The law enforcement officer who signed the complaint is Defendant Darren Mangott – who is as Sergeant Detective employed with the Easton Police Department.

90. Sgt. Mangott was not a witness to any of the above allegations made by the Plaintiffs within this complaint, but signed an application for criminal complaint believing he had probable cause to charge Mr. Gervais with the aforementioned crimes listed in paragraph 88.

91. Sgt. Mangott also drafted a police report along with his application for criminal complaint against Mr. Gervias.

92. In Sgt. Mangott's police report, he claimed that he reviewed a recorded statement from Brwester which outlined her memory of the events which took place inside of 81 Central before she was shot.

93. Sgt. Mangott claimed in his report that Brewster alleged that she approached Gervais in the home and she heard police command Mr. Gervais to "drop the knife".

94. Sgt. Mangott further claimed in his police report that Brewster claimed that Gervais did not drop the knife and that is when the police shot Gervais.

95. A review of Brewster's recorded statement demonstrated that she (Brewster) never claimed at any point in time that she ever heard police command Mr. Gervais to "drop the knife".

96. A review of Brewster's recorded statement demonstrated that she (Brewster) never claimed that Gervais was shot immediately after he was commanded to drop the knife by police but did not.

97. Also, Sgt. Mangott claimed in his police report that Ofc. Nevens informed him that he fired two rounds at a male suspect who was threatening a woman with a knife.

98. There were no additional facts reported in Sgt. Mangott's police report (coming from Ofc. Nevens) which explained any details surrounding any threat by a male suspect with a knife including facts supporting cause to believe or an inference that:

    a. Gervais intended to commit a battery upon Brewster with a knife;

    b. Gervais intended to put Brewster in fear of an immediate battery with a knife;

    c. Gervais took some overt step toward accomplishing that intent; and

    d. Gervais came reasonably close to doing so.

99. In fact, the Sgt. Mangott's police report never once alleged a fact basis to support any of the two crimes filed against Gervais (Assault and Battery upon a household member and Assault with a Dangerous Weapon), other than a conclusory statement alleged to have been made by Ofc. Nevens that he saw a "man was threatening a woman with a knife".

100. At the time that Sgt. Mangott filed for criminal charges against Gervais, he had only been informed that Brewster claimed that she saw Gervais with a knife in his hand, but she never once claimed that Gervais threatened or assaulted her with it.

101. Before Sgt. Mangott applied for the criminal application against Mr. Gervais, Sgt. Mangott had never received facts to support each element as to probable cause for a charge of Assault with a Dangerous Weapon against Gervais and perpetrated against Brewster.

102. As a result, Sgt. Mangott knowingly brought a charge of Assault with a Dangerous Weapon against Gervais without having sufficient evidence to do so.

103. Before Sgt. Mangott applied for the criminal application against Mr. Gervais, Sgt. Mangott had never received facts to support each element as to probable cause for a charge of Assault and Battery upon a Household Member against Gervais and perpetrated against Brewster.

104. As a result, Sgt. Mangott knowingly brought a charge of Assault and Battery upon a Household Member against Gervais without having sufficient evidence to do so.

105. Sgt. Mangott applied for the criminal application against Dwayne Gervais to try and deflect blame from his own department for the shooting of both Gervais and Brewster.

106. Sgt. Mangott applied for the criminal application against Dwayne Gervais in an attempt to justify the shooting of both Gervais and Brewster.

107. Sgt. Mangott initiated the criminal case against Dwayne Gervais with an improper purpose.

108. Mr. Gervais defended himself in court after the charges were lodged by Sgt. Mangott and received a verdict of "not guilty" on all charges.

109. But for the actions of Sgt. Mangott in applying for an application for a criminal complaint against Dwayne Gervias, the prosecution of Plaintiff Gervais would not have proceeded.

110. Plaintiff Gervais did not engage in the conduct alleged by Sgt. Mangott in his application for the criminal complaint against Gervais, and the prosecution was terminated in favor of Plaintiff Gervais.

## CLAIMS FOR RELIEF

**<u>First</u> Claim for Relief**
42 U.S.C.§ 1983 -Unlawful and Excessive Force in Violation of The
Fourteenth Amendment Due Process
(Plaintiff DWAYNE GERVAIS Against NEVENS and STANTON)

111. Plaintiffs realleges and incorporated herein by reference each and every allegation contained in paragraph 1 through 110 of this complaint.

112. 42 U.S.C.§ 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subject or causes to be subject any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action in law or in equity, or other appropriate proceedings for Redress...

113. All individual defendants for this claim, qualify as a "person' for purposes of 42 U.S.C.§ 1983.

114. All individual defendants, at all-time relevant here to, were acting under the color of state law in their capacity as a police officer for the Town of Easton and their action or omissions were conducted within the scope of their official duties or employment.

115. At all material times, plaintiff, Mr. Dwayne Gervais had a clearly established constitutional right under the 14th amendment to secure in his person from unreasonable seizures through excessive force.

116. Plaintiff Mr. Dwayne Gervais also had the clearly established constitutional right under the 14th amendment to bodily integrity and to be free from excessive force by law enforcement.

117. Any reasonable Town of Easton police officer, including Officers Stanton and Nevens, knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

118. Officers Nevens and Stanton's actions use of force, as described herein, individually and/or collectively, and by their actions and/or omissions, were all objectively unreasonable in light of the fact and circumstances confronting them in violated the 14th Amendment rights of plaintiff, Mr. Dwayne Gervais.

119. Officers Stanton and Nevens' actions and use of force, as described herein, but also malicious and/or involved reckless, callous, and deliberate indifference to the plaintiff, Mr. Dwayne Gervais's federal protected right.

120. The force used by defendants Stanton and Nevens shocks the conscience and violated the 14th Amendment rights of the plaintiff, Mr. Dwayne Gervais.

121. Officers Stanton and Nevens unlawfully seized plaintiff, Mr. Dwayne Gervais by means of objectively unreasonable, excessive and conscious shocking physical force.

122. The force used was unlawful and excessive, causing serious bodily injury to plaintiff, Dwayne Gervais.

123. Officers Nevens and Stanton engaged in the conduct described by this complaint willfully, maliciously, and bad faith, and recklessness disregard of the plaintiff, Dwayne Gervais federal protected constitutional rights.

16

124. Officers Nevens and Stanton did so with shocking and willful indifference to plaintiff Dwayne Gervais's right and with conscious awareness that it could cause him severe bodily harm or death.

125. The acts and/or omissions of individual defendants Nevens and Stanton were the force behind Mr. Dwayne Gervais's injuries.

126. The acts and/or omissions of Officers Nevens and Stanton as described herein intentionally deprived Plaintiff, Dwayne Gervais of his constitutional rights and caused him other damages.

127. Officers Nevens and Stanton are not entitled to qualified immunity for their actions.

128. As a proximate result of Officers Nevens and Stantons' unlawful conduct, plaintiff Mr. Dwayne Gervais was injured.

129. As a further result of Officer Nevens' and Stanton's unlawful conduct, plaintiff, Mr. Dwayne Gervais has incurred special damages, including medical expenses, and other special damages related expenses, and amounts to be established at trial.

130. On information and belief, plaintiff, Dwayne Gervais suffered lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his injuries and amounts to be ascertained and trial.

131. Dwayne Gervais is further entitled to attorney fees and costs pursuant to 42 U.S.C.§ 1988, prejudgment interest and cost allowable by federal law, and including all special damages.

132. In addition to compensatory, economic, consequential, and special damages, plaintiff, Mr. Dwayne Gervais is entitled to punitive damages against each of the individuals named defendants under 42 U.S.C.§ 1983, in that the actions of each of these individual defendants

have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional right of plaintiff Mr. Dwayne Gervais.

133. Defendants Nevens and Stanton are jointly and severally liable for violating plaintiff, Dwayne Gervais' 14th Amendment rights.

134. Wherefore, the plaintiff prays for the following relief:

A. Judgment for compensation damages and excesses of $10,000,000.00.

B. Judgment for exemplary or punitive damages;

C. Cost of suit;

D. Reasonable attorney fees pursuant to 42 U.S.C.§ 1988;

E. Trial by jury as to all issues so triable; and

F. Such other relief as this honorable court deeming just and appropriate.

**Second** Claim for Relief
42 U.S.C.§ 1983 -Unlawful and Excessive Force in Violation of The
Fourteenth Amendment Due Process
(Plaintiff ASHLEE BREWSTER Against NEVENS and STANTON)

135. Plaintiffs realleges and incorporated herein by reference each and every allegation contained in paragraph 1through 134 of this complaint.

136. 42 U.S.C.§ 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subject or causes to be subject any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action in law or in equity, or other appropriate proceedings for Redress...

137. All individual defendants for this claim, qualify as a "person' for purposes of 42 U.S.C.§ 1983.

138. All individual defendants, at all-time relevant hereto, were acting under the color of state law in their capacity as a police officer for the Town of Easton and their action or omissions were conducted within the scope of his official duties or employment.

139. At all material times, plaintiff, Ashlee Brewster had a clearly established constitutional right under the 14th amendment to secure in her person from unreasonable seizures through excessive force.

140. Plaintiff Ashlee Brewster also had the clearly established constitutional right under the 14th amendment to bodily integrity and to be free from excessive force by law enforcement.

141. Any reasonable Town of Easton police officer knew or should have known of these rights at the time of the complained conduct as they were clearly established at that time.

142. All individual named defendants' actions and their use of force, as described herein, individually and/or collectively, by their actions and/or admissions, and were all objectively unreasonable in light of the fact and circumstances confronting them in violated the 14th Amendment rights of plaintiff, Ashlee Brewster.

143. All individual defendants' actions and use of force, as described here in, but also malicious and/or involved reckless, callous, and deliberate indifference to the plaintiff, Ashlee Brewster's federal protected right.

144. The force used by all individual defendants shocks the conscience and violated the 14th Amendment rights of the plaintiff, Ashlee Brewster.

145. All individual defendants unlawfully seized plaintiff, Ashlee Brewster by means of objectively unreasonable, excessive and conscious shocking physical force.

146. The force used was unlawful and excessive, causing serious bodily injury to plaintiff, Ashlee Brewster.

147. All individual defendants engaged in the conduct described by this complaint willfully, maliciously, and bad faith, and reckless disregard of the plaintiff, Ashlee Brewster federal protected constitutional rights.

148. All individual defendants did so with shocking and willful indifference to plaintiff Ashlee Brewster's right and with conscious awareness that it could cause her severe bodily harm or death.

149. The acts or omissions of all individual defendants were the force behind Ashlee Brewster's injuries.

150. The acts or omissions of all individual defendants as described herein intentionally deprived plaintiff, Ashlee Brewster of her constitutional rights and caused her other damages.

151. None of the individual defendants are entitled to qualified immunity for their actions.

152. As a proximate result of all individual defendants' unlawful conduct, plaintiff Ashlee Brewster was injured.

153. As a further result of the individual defendants' unlawful conduct, plaintiff, Ashlee Brewster has incurred special damages, including medical expenses, other special damages related expenses, and amounts to be established at trial.

154. On information and belief, plaintiff, Ashlee Brewster suffered lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of her injuries and amounts to be ascertained and trial.

155. Ashlee Brewster is further entitled to attorney fees and costs pursuant to 42 U.S.C.§ 1988, prejudgment interest and cost allowable by federal law, including all special damages.

156. In addition to compensatory, economic, consequential, and special damages, plaintiff, Ashlee Brewster is entitled to punitive damages against each of the individuals named defendants under 42 U.S.C.§ 1983, in that the actions of each of these individual defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional right of plaintiff Ashlee Brewster.

157. ALL defendants are jointly and severally liable for violating plaintiff, Ashlee Brewster' 14th Amendment rights.

158. Wherefore, the plaintiff prays for the following relief:

    A. Judgment for compensation damages and excesses of $10,000,000.00.

    B. Judgment for exemplary or punitive damages;

    C. Cost of suit;

    D. Reasonable attorney fees pursuant to 42 U.S.C.§ 1988;

    E. Trial by jury as to all issues so triable; and

    F. Such other relief as this honorable court deems just and appropriate.

**Third** Claim For Relief
(Assault and Battery)
(Plaintiff Dwayne Gervais Against NEVENS and STANTON)

159. Plaintiffs realleges and incorporates herein by reference each and every allegation contained in paragraphs one through 158 of this complaint.

160. On October 22, 2022, Defendant Nevens shot Plaintiff Mr. Dwayne Gervais with a firearm twice in the buttocks and used unjustifiably, unlawful and excessive force Mr. Dwayne Gervais.

161. Defendant Stanton was complicit in this shooting of Mr. Dwayne Gervais, via his actions and/or omissions.

162. Such force was objectively excessive and unreasonable under the circumstances.

163. All individually named defendants via their actions, as described more fully hereinabove, put plaintiff Mr. Dwayne Gervais in actual, suggest apprehension of immediate harmful or offensive contact.

164. Plaintiff Mr. Dwayne Gervais's apprehension was objectively reasonable under the circumstances in that a person of ordinary care or prudence under the same or similar circumstances would have believed that harmful, or offensive contact was about to occur.

165. All individual defendants' actions against plaintiff Mr. Dwayne Gervais were unreasonable and unlawful.

166. At the time plaintiff, Mr. Dwayne Gervais was shot with a firearm, plaintiff Mr. Dwayne Gervais did not pose any threat or harm to any members of this Town of Easton Police Department, or others.

167. All individual defendants acted with a depraved indifference to human life and conscious disregard for the safety of the general public. The intentional, unwelcome, and unprivileged touching of Plaintiff, Mr. Dwayne Gervais, was undertaken in bad faith and with actual malice.

168. As a further direct and proximate result of the conduct described above, plaintiff Mr. Dwayne Gervais suffered bodily and psychological injuries.

169. Mr. Dwayne Gervais suffered from loss of his liberty and freedom, bodily injuries resulting in mental anguish, and medical expenses for treatment and care.

170. Plaintiff Mr. Dwayne Gervais did not consent to contact with, from or by any of the individual defendants.

171. All individual defendants named are jointly and severely liable for their assault and battery towards plaintiff Mr. Dwayne Gervais.

172. Wherefore, Plaintiff prays for the following reason;

      A. Judgment for compensation damages and excesses of $1,000,000.00.

      B. Judgment for exemplary or punitive damages;

      C. Cost of suit;

      D. Reasonable attorney fees;

      E. Trial by jury as to all issues so triable; and

      F. Such other relief as this honorable court deems just and appropriate.

**Fourth** Claim for Relief
(Assault and Battery)
(Plaintiff Ashlee Brewster Against NEVENS and STANTON)

173. Plaintiffs realleges and incorporates herein by reference each and every allegation contained in paragraphs one through 172 of this complaint.

174. On October 22, 2022, Defendant Nevens shot plaintiff Ashlee Brewster with a firearm and used unjustifiably, unlawful and objectively excessive force against her under the circumstances.

23

175. Defendant Stanton was complicit in this shooting of Ms. Ashlee Brewer, via his actions and/or omissions.

176. All individually named defendants via their actions, as described more fully hereinabove, put plaintiff Ashlee Brewster in actual apprehension of immediate harmful or offensive contact.

177. Plaintiff Ashlee Brewster's apprehension was objectively reasonable under the circumstances in that a person of ordinary care or prudence under the same or similar circumstances would have believed that harmful, or offensive contact was about to occur.

178. All individual defendants' actions against plaintiff Ashlee Brewster were unreasonable and unlawful.

179. At the time plaintiff, Ashlee Brewster was shot with a firearm, plaintiff Ashlee Brewster did not pose any threat or harm to any members of this Town of Easton Police Department, or others.

180. All individual defendants acted with a depraved indifference to human life and conscious disregard for the safety of the general public. The intentional, unwelcome, and unprivileged touching of plaintiff Ashlee Brewster was undertaken in bad faith and with actual malice.

181. As a further direct and proximate result of the conduct described above, plaintiff Ashlee Brewster suffered bodily and psychological injuries.

182. Ashlee Brewster suffered from loss of her liberty and freedom, bodily injuries resulting in mental anguish, and medical expenses for treatment and care.

183. Plaintiff Ashlee Brewster did not consent to contact with, from or by any of the individual defendants.

184. All individual defendants are jointly and severely liable for their assault and battery towards plaintiff Ashlee Brewster.

185. Wherefore, the plaintiff prays for the following relief;

    A. Judgment for compensation damages and excesses of $1,000,000.00.

    B. Judgment for exemplary or punitive damages;

    C. Cost of suit;

    D. Reasonable attorney fees;

    E. Trial by jury as to all issues so triable; and

    F. Such other relief as this honorable court deems just and appropriate.

**Fifth** Claim for Relief
False Imprisonment
(Dwayne Gervais Against NEVES and STANTON)

186. Plaintiffs reallege and incorporates herein by reference each and every allegation contained in paragraph one through 185 of this complaint.

187. Plaintiff Mr. Dwayne Gervais was shot and arrested by Officers NEVES and STANTON.

188. These two defendants acted in concert in restricting plaintiff Mr. Dwayne Gervais' movement, detaining plaintiff Dwayne Gervais by shooting him, removing his freedom to move and holding him against his will and without probable cause.

189. These defendants acted in concert willfully and with malice, detaining plaintiff Mr. Dwayne Gervais for no legal or lawful purpose.

190. At no time did the plaintiff, Mr. Dwayne Gervais consent to being detained and restricted by the defendants.

191. The defendants had no legal basis or probable cause to reclaim, detain and arrest plaintiff Mr. Dwayne Gervais.

192. As for the direct and proximate result of the conduct described above, plaintiff Mr. Dwayne Gervais separate injuries to his body and other injuries.

193. Plaintiff Mr. Dwayne Gervais also suffered loss of his liberty and freedom, bodily injuries resulting in pain and suffering, mental anguish, and medical expenses for treatment and care.

194. Wherefore, the plaintiff prays for the following reason;

> A. Judgment for compensation damages and excesses of $1,000,000.00.
>
> B. Judgement for exemplary or punitive damages;
>
> C. Cost of suit;
>
> D. Reasonable attorney fees;
>
> E. Trial by jury as to all issues so triable; and
>
> F. Such other relief as this honorable court deems just and appropriate.

**Sixth** Claim for Relief
False Imprisonment
(Ashlee Brewster Against NEVES and STANTON)

195. Plaintiffs reallege and incorporates herein by reference each and every allegation contained in paragraph one through 194 of this complaint.

196. Plaintiff Ashlee Brewster was shot and thereafter detained by the named defendants.

26

197. These defendants acted in concert in restricting plaintiff Ashlee Brewster's movement, detaining plaintiff Ashlee Brewster by shooting her, removing her freedom to move and holding her against his will and without probable cause.

198. These defendants acted in concert willfully and with malice, detaining plaintiff Ashlee Brewster for no legal or lawful purpose.

199. At no time did the plaintiff Ashlee Brewster consent to being detained and restricted by the defendants.

200. The defendants had no legal basis or probable cause to reclaim, detain and/or arrest plaintiff Ashlee Brewster.

201. As for the direct and proximate result of the conduct described above, plaintiff Ashlee Brewster separate injuries to her body and other injuries.

202. Plaintiff Ashlee Brewster also suffered loss of her liberty and freedom, bodily injuries resulting in pain and suffering, mental anguish, and medical expenses for treatment and care.

203. Wherefore, plaintiff prays for the following reason;

    A. Judgment for compensation damages and excesses of $ 1,000,000.00.

    B. Judgement for exemplary or punitive damages;

    C. Cost of suit;

    D. Reasonable attorney fees ;

    E. Trial by jury as to all issues so triable; and

    F. Such other relief as this honorable court deems just and appropriate.

**Seventh** Claim for Relief
Intentional Infliction of Emotional Distress
(Plaintiff Dwayne Gervais Against All Defendants)

202. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 201 of this Complaint.

203. On October 22, 2022, defendants subjected plaintiff Dwayne Gervais to significant physical and psychological stress.

204. On the aforementioned date, defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from his actions.

205. Defendants conduct was extreme and outrageous. Defendants acted in a manner that a reasonable person would describe as beyond the bounds of decency.

206. As a direct and proximate result of Defendant's conduct, plaintiff Dwayne Gervais suffered severe emotional distress.

207. No reasonable person should be expected to suffer the emotional distress that resulted from Defendant s' conduct.

**WHEREFORE**, the Plaintiff demands a judgment against all defendants for the above-described damages to plaintiff Dwayne Gervais, together with interest and costs.

**Eighth** Claim for Relief
Intentional Infliction of Emotional Distress
(Plaintiff Ashlee Brewster Against ALL Defendants)

208. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 207 of this Complaint.

209. On October 22, 2022, defendants subjected plaintiff Ashlee Brewster to significant physical and psychological stress.

28

210. On the aforementioned date, defendants intended to cause emotional distress, or knew or should have known that emotional distress would result from their actions.

211. Defendants' conduct was extreme and outrageous. Defendants acted in a manner that a reasonable person would describe as beyond the bounds of decency.

212. As a direct and proximate result of Defendants' conduct, plaintiff Ashlee Brewster suffered severe emotional distress.

213. No reasonable person should be expected to suffer the emotional distress that resulted from defendant's conduct.

**WHEREFORE**, the Plaintiff demands a judgment against defendants, jointly and severally for the above-described damages to plaintiff Ashley Brewster, together with interest and costs.

### **Ninth** Claim for Relief
### Negligent Infliction of Emotional Distress
### (Plaintiffs Against ALL Defendants)

214. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 213 of this Complaint.

215. Defendants were negligent in their actions and knew or should have known that their actions would cause emotional distress.

216. The Plaintiffs suffered severe emotional distress.

217. The Defendant negligent conduct proximate caused the Plaintiffs' emotional distress.

218. Plaintiffs suffered physical harm manifested by objective symptomatology.

219. A reasonable person in the Plaintiffs' position would have suffered emotional distress under the circumstances of the Defendants' negligent conduct.

**WHEREFORE**, the Plaintiff demands a judgment against defendants, jointly and severally for the above-described damages to plaintiffs, together with interest and costs.

**Tenth** Claim for Relief
Malicious Prosecution
(Plaintiff Dwayne Gervais Against Sgt. Mangott)

220. Plaintiffs reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 219 of this Complaint.

221. The defendant Sgt. Mangott acted without probable cause and with malice toward plaintiff Gervais when he applied for criminal charges against Mr. Gervais as described heretofore.

222. Because of Sgt. Mangott's actions, plaintiff Gervais had to stand trial to defend against the charges and after a jury trial, received a verdict of "not guilty" on all charges.

223. But for the defendants' actions, the prosecution of Plaintiff Gervais would not have proceeded.

224. Plaintiff Gervais did not engage in the alleged conduct and the prosecution was terminated in favor of Plaintiff Gervais.

**WHEREFORE**, the plaintiff demands judgment against each Sgt. Mangott for the above-described damages to Plaintiff Gervais, together with interest and costs.

**Eleventh** Claim for Relief
42 U.S.C. § 1983
Monell Policies and Practices
(Plaintiffs against the Town of Easton)

225. Plaintiff repeats and realleges the foregoing paragraphs 1 through 224 as if fully set forth herein.

226. The actions of Defendants BOONE, BAKER, NEVENS, STATON, WEBSTER, and MANGOTT were done pursuant to one or more interrelated de facto policies, practices and/or customs of the Town of Easton, its Police Department, its Internal Affairs Division and/or its Police Chief.

227. At all times material to this complaint Defendant Town of Easton and its Police Department, Internal Affairs Division and/or Police Chief had interrelated de facto policies, practices, and customs which included, among other things, (a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers, particularly those who are repeatedly accused by citizens of brutality and other serious violations of constitutional rights; (b) the police code of silence; and/or (c) the encouragement of unreasonable use of force.

228. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have used unreasonable force against a criminal defendant.

229. The de facto policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable use of force are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

230. Before, at the time, and after the incident giving rise to this complaint, officers of the Town of Easton, as a matter of widespread practice so prevalent as to comprise municipal policy, abused

citizens in a manner similar to that alleged by Plaintiffs in this Complaint on a frequent basis, yet the Town of Easton made findings of wrongdoing by officers in a disproportionately small number of cases.

231. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants and other officers by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions of the Police Department, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, among other things, by the Department's failure to properly investigate the prior unconstitutional conduct of Defendants and other officers, or to discipline them for their unconstitutional conduct.

232. The failure to discipline and code of silence is further evidenced by the Defendants' failure to come forward to report officers' misconduct, lying in their official reports and IAD interviews about the complained of attack on Plaintiffs, and by the Town of Easton's failure to discipline the Defendants for these falsehoods.

233. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable use of force, separately and together, proximately caused injury to the Plaintiffs in this case, inter alia, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

234. But for the belief that they would be protected, both by fellow officers and by the Department, from serious career and criminal consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

235. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

236.    Wherefore, Plaintiff prays for the following reason;

    A. Judgment for compensation damages and excesses of $10,000,000.00.

    B. Judgement for exemplary or punitive damages;

    C. Cost of suit;

    D. Reasonable attorney fees;

    E. Trial by jury as to all issues so triable; and

    F. Such other relief as this honorable court deems just and appropriate.

**Twelfth** Claim for Relief
Violations of M.G.L. c 12, §11I

237. Plaintiffs repeat and realleges the foregoing paragraphs 1 through 236 as if fully set forth herein.

238. The defendants based upon the aforementioned allegations, violated the plaintiffs' rights under the 4th, 5th, 8th and 14th amendments to the United States Constitution and under Article 1, 10, and 14 of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts.

239. The above actions of ALL defendants were taken by means of threats, intimidation and coercion.

240. By their actions described herein, the defendants violated the plaintiffs' rights as protected by G.L. c. 12, section 11I, causing their injuries.

241. The defendants acted with malice or with reckless disregard for whether Plaintiffs' rights would be violated by their actions, causing them injury.

242. Wherefore, plaintiffs pray for the following reason;

     A. Judgment for compensation damages and excesses of $ 10,000,000.00.

     B. Judgment for exemplary or punitive damages;

     C. Cost of suit;

     D. Reasonable attorney fees;

     E. Trial by jury as to all issues so triable; and

     F. Such other relief as this Honorable Court deems just and appropriate.

**Thirteenth Claim for Relief**
**Massachusetts Torts Claims Act**
**G.L. c. 258, §4**
**(Plaintiffs Against the Town Of Easton)**

243. Plaintiffs repeats and realleges the foregoing paragraphs1 through 242 as if fully set forth herein.

244. The Town of Easton, as of October 22nd, 2022, was a duly established municipality under the laws of the Commonwealth, is located within the county of Bristol, and is a public employer within the meaning of the Massachusetts tort claims act, Massachusetts General laws chapter 258.

245. Jurisdiction over this action is conferred by Massachusetts General Laws Chapter 258, as

amended by Statutes of 1978 chapter 512 section 15.

246. The Plaintiffs have complied with all conditions precedent under M. G. L. chapter 258, and did pursuant to chapter 258 Section 4, present this claim in writing to the chief executive officer of the Town of Easton by mailing the same, by certified mail, return receipt requested, a notice of claim setting forth the name and address of the plaintiffs, you have the planes, the time, when the place yeah, and the manner in which the claim of roles, and the items are damaged were induced by the events of stained as far as them practicable.

247. The Defendant, Town of Easton, admits that Plaintiffs presentment letter, attached here too as Exhibit A, has complied with all conditions precedent under the Massachusetts Tort Claims Act, the lodges no objection to the presentment letter, grounded in some defect of procedure or notice.

248. At the time of the incident alleged above (excessive force and/or assault and battery against the plaintiffs), the Defendants were acting within the scope of their employment as employees of the Town of Easton.

249. The Plaintiffs state that the Defendant Town of Easton was negligent by virtue of the actions of itself, its agents, servants and/or employees as described above, said negligence causing the Plaintiffs sustained severe injuries and were prevented from engaging in their life activities, suffered great pain of body and mind.

250. The Town of Easton owed a duty to exercise reasonable care, by its subdivision, Easton Police Department in the hiring, training and supervising of officers including the above-named defendants.

251. The Town of Easton, by its subdivision the Easton Police Department hired, trained,

supervised and assigned the defendants as members of the Easton Police Department with

such recklessness, gross negligence, and ordinary negligence as to render the Town Easton

liable for all the proximately caused damage to the Plaintiffs under M.G.L. chapter 258.

252. Demand was made upon the appropriate chief executive officer of the Defendant Town of

Easton pursuant to G. L. C. 258, which demand has not been met by a reasonable offer of

settlement.

WHEREFORE, the Plaintiffs demands judgment against each individual defendant for the above-

described damages to Plaintiffs, together with interest and costs.

## Demand for Jury Trial

**Plaintiffs demand a trial by jury on all claims for relief so triable.**

## CERTIFICATION

**Under Federal Rule of Civil Procedure 11, by signing below, WE certify to the best of our
knowledge, information, and belief that this complaint:**

(1) **is not being presented for an improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation;**
(2) **is supported by existing law or by a nonfrivolous argument for extending,
modifying, or reversing existing law;**
(3) **the factual contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a reasonable opportunity
for further investigation or discovery; and**
(4) **the complaint otherwise complies with the requirements of Rule 11.**

Respectfully Submitted,

Dwayne Gervais and Ashlee Brewster
By Their Attorneys,

**/s/Anthony R. Ellison**
_____
Anthony R. Ellison, Esq.

36

The Ellison Law Firm
299 Gallivan Boulevard
Boston, MA 02124
Tel. (617) 506-7056
Fax (617) 506-7175
Cell (617) 642-0689
Email: arellisonlaw@gmail.com
BBO 567037


**/s/Gordon Spencer**
_____
Gordon Spencer, Esq.
945 Concord Street
Framingham, MA 01701
Email: attyspencer@aol.com
BBO# 630488

37